Alexander H. Spitz and Warren E. Spitz, Trading as Spitz and Spitz, Appellants, v. Jack Brickhouse, Appellee.

Gen. No. 46,256.

Opinion filed October 19, 1954. Released for publication January 4, 1955.

IGNATZ SPITZ, of Chicago, for appellants; IRVING BREAKSTONE, of Chicago, of counsel.

KIRKLAND, FLEMING, GREEN, MARTIN & ELLIS, of Chicago, for appellee; MAX E. WILDMAN, DAVID PARSON, and EDWIN T. SUJACK, all of Chicago, of counsel.

MR. JUSTICE ROBSON delivered the opinion of the court.

Alexander H. Spitz and Warren E. Spitz, doing business as Spitz & Spitz, plaintiffs, brought this action to recover $2,675 as their architects' fee under a written contract with Jack Brickhouse, the defendant. Defendant in his answer charges that plaintiffs breached their contract by failing to design a home costing no more than $25,000, and counterclaims for the return of $250 he had paid plaintiffs. The court tried the issues without a jury, found for the defendant and entered judgment on his counterclaim. Plaintiffs appealed.

Two points are cited by plaintiffs as error. 1. The admission of parol testimony to prove, vary and change the terms. 2. The findings of the court are not supported by, but are contrary to the evidence.

The record discloses that plaintiffs and defendant entered into a standard A. I. A. form contract on June 12, 1950. It provides that defendant agrees to pay plaintiffs for their professional services "a fee of Ten (10) per cent of the cost of the work . . . said percentage being hereinafter referred to as the 'basic rate.'" Enumerated thereafter are the architect's services, consisting of necessary conferences, preparation of preliminary studies, working drawings, specifications, etc. The pertinent portions of the contract read as follows:

"If any work designed or specified by the Architect is abandoned or suspended, in whole or in part, the Architect is to be paid for the service rendered on account of it.

"5. Payments.—Payments to the Architect on account of his fee shall be made as follows, subject to the provisions of Art. 4:

"Upon completion of the preliminary studies, a sum equal to 25% of the basic rate computed upon a reasonable estimated cost.

"During the period of preparation of specifications and general working drawings (exclusive of details)

·monthly payments aggregating at the completion thereof a sum sufficient to increase payments to 75% of the rate or rates of commission arising from this agreement, computed upon a reasonable cost estimated on such completed specifications and drawings, or if bids have been received, then computed upon the lowest bona fide bid or bids.

[Payments thereafter and during the execution of the work increase until "equal to the rate or rates of commission arising from this agreement, computed upon the final cost of the work."]

". . .

"8.  Preliminary Estimates.—When requested to do so the Architect will furnish preliminary estimates on the cost of the work, but he does not guarantee the accuracy of such estimates.

"9. Definition of the Cost of the Work.—The cost of the work . . . means the cost to the Owner [exclusive of architect's fees]. . . ."

Plaintiffs prepared the plans, specifications, made detail drawings and conferred with the defendant about them. Plaintiffs took bids in conformity with the specifications. The lowest bid received was $39,000. Defendant contends that the parties orally agreed that the maximum cost of the home would not exceed $25,000, and on this basis rejected the bid and refused to proceed with the work. The court admitted evidence of the oral agreement, to which plaintiffs objected.

 The law is well established that where a written contract is uncertain, ambiguous or incomplete, evidence of a contemporaneous oral agreement to prove the entire contract is admissible. *Scholbe v. Schuchardt,* 292 Ill. 529, 534. Whether it was intended to be their complete and final agreement is to be determined from the circumstances of the case. *Fuchs & Lang Co. v. R. J. Kittredge & Co.,* 242 Ill. 88, 94. If it

is silent in essential particulars, parol evidence is admissible to establish the missing parts, although inadmissible to contradict those unambiguous terms expressed in the document. *Fuchs & Lang Co. v. R. J. Kittredge & Co., supra; Meyer v. Sharp,* 341 Ill. App. 431, 435.

The form contract in the instant case is silent as to the style of the house to be designed, the number of its rooms, its dimensions, the quantity and quality of the materials to be used in erecting it, and so on. In *Bair v. School Dist. No. 141 of Smith County,* 94 Kan. 144, 146 Pac. 347, the court said: "There must be something outside the contract to determine these questions. The architect must have had instructions outside the contract with which to undertake to comply, in the preparation of his plans." See also *Keck v. Kavanaugh,* 45 N. D. 81, 177 N. W. 99. One of those instructions must have concerned the cost of the building. *Bair v. School Dist. No. 141 of Smith County, supra; Keck v. Kavanaugh, supra.* As in these cases, so in the following— all involving similar or substantially identical A. I. A. form contracts—parol evidence to prove an agreement as to maximum cost where the form contract was silent was held admissible: *Andry & Feitel v. Ewing,* 15 La. App. 272, 130 So. 570; *Wetzel v. Roberts,* 296 Mich. 114, 295 N. W. 580, 583; *Loyal Order of Moose, Adrian Lodge 1034 v. Faulhaber,* 327 Mich. 244, 41 N.W.2d 535; *Hite v. Aydlett,* 192 N. C. 166, 134 S. E. 419; and cf. *Lambright v. Everett,* 21 Ga. App. 488, 94 S. E. 593. But cf. *Wick v. Murphy,* 237 Minn. 447, 54 N.W.2d 805.

■■ Furthermore, to sustain plaintiffs' contention that the cost is to be determined by the lowest bona fide bid, it would be necessary to hold that no matter how large the bid for doing the work, the owner would be obligated to pay an architectural fee based on that amount. As Warren Spitz, one of the plaintiffs, testified, "Under our understanding the theory of this con-

tract, if we were to design a house after we had procured his signature on that written contract, a five room house could cost anywhere from $10,000 to half a million." The written language of the contract renders this testimony of doubtful credibility. In paragraph 5 it is provided that upon completion of the preliminary studies the architect should be paid 25% of the basic rate "computed on a reasonable estimated cost." Unless some "reasonable estimated cost" had been agreed upon, it would render meaningless the "basic rate" for the determination of the architect's fee. *Wetzel v. Roberts, supra; Loyal Order of Moose, Adrian Lodge 1034 v. Faulhaber, supra; Wick v. Murphy, supra.* There is nothing in the contract, nor anything in the circumstances of this case, to buttress plaintiffs' contention. Expression of their intention could have been made clear. They provided the form contract. It is to be construed most strongly against them and any ambiguity resolved favorably to the defendant. *Egyptian Seed Growers' Exchange v. Hollinger,* 238 Ill. App. 178, 182; *Wick v. Murphy, supra.*

██ It was not error for the trial court to admit testimony to explain the ambiguities and any incomplete portions of the contract.

Plaintiffs cite *Mitterhausen v. South Wisconsin Conference Ass'n,* 245 Wis. 353, 14 N.W.2d 19, involving an identical standard A. I. A. contract, where parol evidence was held inadmissible. That case is not in conflict with any of the cases we have cited (see *Wick v. Murphy, supra*) nor with our holding in the instant case. Viewing the contract through the prism of different circumstances, the court in the *Mitterhausen* case concluded that the contract contained the complete agreement of the parties. There was evidence of "extensive negotiations" culminating in the contract, and the owner's approval bottomed on sketches, drawings, plans and specifications rather than on some specific

price. That is, the owner was not so much concerned with cost, as such, but concerned more that the structure to be erected conform to the sketches, drawings, plans and specifications which had been agreed upon. Under these circumstances, while there are points of variance, our views are not incompatible with those expressed in the *Mitterhausen* case.

As to the second point, the law is that the findings of the trial court on questions of fact may not be set aside unless such findings are clearly and manifestly against the weight of the evidence. *Jorn v. Tallett,* 341 Ill. App. 240, 246. The record reveals that defendant and his wife at all times insisted that the maximum cost of the house should not exceed $25,000. Defendant testified that in May 1950, he and his wife and plaintiff Warren Spitz went to the lot upon which they desired to build and asked Warren Spitz if he could build a five and a half or six-room house, ranch style, if defendant provided the lot, for $25,000. Spitz answered, "I believe so, yes; and we can make it a beauty." In June 1950, at their second conference with Warren Spitz, he informed defendant that he would like a retainer of $250. When asked how he arrived at that figure, he informed them that it was ten per cent of their fee. A check for $250 was given at that time. Warren Spitz presented a contract. He said it was the standard form of agreement. Defendant asked him what it meant. Warren Spitz said, "It means that when you build a house, we are your architects; this is to keep you from changing horses in the middle of the stream." The agreement as prepared by plaintiffs was signed without any changes. Defendant repeated that the cost of the house was not to exceed $25,000. He was informed that this figure was correct and "when your home is put up, our fee will be $2,500," and the $250 was ten per cent of the cost. Defendant and his wife both testified that when they were informed that the

542

house would cost from $39,000 to $44,000 they told plaintiffs they could not finance such a home. The lot had cost them $5,000. The furnishings would run $10,000 to $12,000. All this would bring the total close to $60,000.

Both plaintiffs denied that maximum cost was discussed at any time. Both said that defendant told them he wanted to give his wife anything she wanted; that improvements increasing the size and area of the house were discussed; that they wanted improved and costly features and other details—at distinct variance with the testimony of defendant and his wife.

There is a sharp conflict between the evidence of plaintiffs and the defendant and we see no basis for substituting our judgment for that of the trial court. The judgment of the trial court is affirmed.

*Judgment affirmed.*

SCHWARTZ, P. J., concurs.

TUOHY, J., took no part.